766 P.2d 1213 (1988)
115 Idaho 322
Larry T. DEKKER and Cheri L. Dekker, husband and wife, in their own behalf, and on behalf of David Lawrence Dekker, their minor child, Plaintiffs-Appellants,
v.
MAGIC VALLEY REGIONAL MEDICAL CENTER; Hospital Management Corporation; Hospital Affiliates International, Inc.; HCA Management Company, Inc.; Hospital Affiliates Development Corporation; Hospital Affiliates Management Corporation; Larry D. Maxwell, James T. Annest, and John Does I-X, Defendants-Respondents.
No. 16889.
Supreme Court of Idaho.
October 20, 1988.
On Denial of Rehearing January 23, 1989.
Hawkes, Esplin & Burnham, Pocatello, for plaintiffs-appellants. Lowell N. Hawkes, argued.
Moffatt, Thomas, Barrett & Blanton, Boise, for respondent Magic Valley Regional Medical Center. Kristi Emig-Mark, argued.
Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent Maxwell. Curt R. Thomsen, argued.
Quane, Smith, Howard & Hull, Boise, for respondent Annest. Kathryn A. Sticklen, argued.
*1214 SHEPARD, Chief Justice.
This is an appeal from a summary judgment entered in a medical malpractice action in favor of defendants hospital, a board-certified anesthesiologist, and a board-certified ear, nose and throat physician. The hospital, Magic Valley Regional Medical Center, is located in Twin Falls, Idaho, and both defendant physicians practice in Twin Falls, Idaho. Summary judgment was granted in favor of all the defendants on the basis that the experts of plaintiffs had failed to establish a familiarity with the community standard of care in Twin Falls, Idaho, and a breach of that standard of care by the defendants. We affirm.
Although a number of issues are raised by plaintiffs-appellants, we deem they are subsumed in, and/or disposed of, by the issue stated above, i.e., has there been established a triable issue of fact of defendants' breach of the applicable standard of care in the instant case.
Summary judgment is properly issued if the pleadings, depositions and admissions on file, together with affidavits, indicate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). Summary judgment is properly issued when the non-moving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. Badell v. Beeks, 115 Idaho 101, 765 P.2d 126 (1988). This Court has most recently stated in Pearson v. Parsons, 114 Idaho 334, 757 P.2d 197 (1988):
In order to preclude summary judgment in medical malpractice cases, plaintiffs must show that expert testimony has been offered by either the plaintiff or defendant, which when viewed in the light most favorable to plaintiffs indicates that the defendant has negligently failed to meet the applicable standard of health care practiced in the community. (citation omitted).
See also Doe v. Durtschi, 110 Idaho 466, 716 P.2d 1238 (1986); Anderson v. Ethington, 103 Idaho 658, 651 P.2d 923 (1982).
The following facts appear to be without question. A minor child, David Lawrence Dekker, was one of twins born May 6, 1979, seven weeks premature. On May 25, 1982, he was admitted to the Magic Valley Hospital for a tonsellectomy, adenoidectomy and bilateral myringodectomy (placement of tubes). He was examined by Maxwell and Annest, the anesthesiologist, prior to surgery. A white cell count and chest x-ray were ordered prior to surgery, and his temperature was monitored every fifteen minutes. The white blood cell count was within normal limits, and the x-ray report and films indicated no infiltrate or on-going infectious upper respiratory problems. On May 26, 1982, anesthesiology services were provided by Dr. Annest, and the surgery was performed by Dr. Maxwell. The surgery report reported the operation as "without complications," but the anesthesia report indicated a "severe laryngospasm," indicating a spasm of the vocal cords closing off the air supply. Following the surgery, complications developed and emergency procedures were necessary, and the child remained in the intensive care unit until June 11, 1982.
Apparently unknown to the parents, the doctors, and the hospital, David's twin brother had contracted a form of viral pneumonia, and had communicated this to David. The communication of the disease was not present, nor ascertainable the morning of surgery. One witness has testified that following surgery the child resumed his course of improvement and appeared to be improving his mental and motor skill development delay which had been exhibited prior to the surgery. However, the parents assert that the child had experienced a lack of oxygen and suffers severe physical and emotional problems. The resolution of that conflict is unnecessary.
As herein noted, to preclude summary judgment in a medical malpractice case, it must be shown by expert testimony that there has been a negligent failure to meet the applicable standard of health care practice of the community. Pearson v. Parsons, supra; Maxwell v. Women's Clinic, P.A., 102 Idaho 53, 625 P.2d 407 *1215 (1981). I.C. § 6-1012 requires as an essential part of plaintiffs' case, affirmative proof that defendant failed to meet the applicable standard of health care practice in the community in which the care was, or should have been, provided. Health care providers are to be judged in comparison with similarly trained and qualified providers of the same class in the same community. "Community" is defined as "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided."
I.C. § 6-1013 requires that the applicable standard of practice, and a defendant's failure to meet that standard must be established by plaintiff with the testimony of
[o]ne (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted as evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; ... (emphasis added).
In the instant case we agree with the well-reasoned opinion of the trial court which held that the evidence submitted by plaintiffs in opposition to the motion for summary judgment failed to establish a prima facie case in accordance with the requirements of the statutes.
In opposition to defendants' motions for summary judgment, plaintiffs submitted two affidavits of physicians, both practicing in Salt Lake City, Utah, one of whom was board-certified in otolaryngology, and the other board-certified in pediatrics and a professor at the University of Utah College of Medicine. Both affidavits opine that because of the indications of upper respiratory infection, the surgery should have been postponed. Each affidavit opines, "It is a departure from optimal patient care to not postpone an elective surgery under such circumstances."[1]
It is clear that neither affidavit demonstrates any knowledge of the applicable standard of care in the area of Twin Falls, Idaho. I.C. § 6-1013 requires "actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; ..." I.C. § 6-1012 provides in pertinent part:
... plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony ..., that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, ...
We find nothing in the supporting affidavits of plaintiffs to create any issue as to the defendants' failure to meet any standard then existing in the area served by their practices or the Magic Valley Regional Medical Center. The affiants practice in Salt Lake City, and there is no indication in the record that they profess any knowledge of the standard of care in the area served by the Magic Valley Regional Medical Center. It is sufficient to say that the affidavits of the plaintiffs' experts in no way demonstrate any such familiarity. It is likewise sufficient to say that in view of the strictures of our statutes, the assertion that defendants' acts were a "departure from optimal patient care" is wholly insufficient to satisfy the burden of plaintiffs at the summary judgment juncture in a medical malpractice action. We further note that the affidavits submitted in opposition to summary judgment contain no assertions regarding a breach of duty by Magic Valley Regional Medical Center.
We have considered plaintiffs' additional assignments of error and consider them *1216 either subsumed in our previous discussion, or so wholly at odds with our well-established case law as to not require comment.
The decision of the district court is affirmed; costs to respondents, no attorney fees allowed.
BAKES and JOHNSON, JJ. concur.
HUNTLEY, Justice, dissenting.
I must respectfully dissent from the affirmance of summary judgment in this case because the affidavits of the plaintiffs clearly establish that the community standard of care in Twin Falls, Idaho was breached in this instance. Certainly there is at minimum a question of fact for the jury raised on that issue.
The record establishes that the hospital and the doctors who practiced there have adopted the standards established by the Joint Commission on Accreditation of Hospitals (JCAH) as the standards under which they will operate in Twin Falls, Idaho. Those standards refer to what is referred to as "optimal patient care."
Plaintiff submitted the affidavits of two doctors, Jerry W. Sonkens, M.D., and Jack A. Madsen, M.D., which established that the care in this case did not meet that of "optimal patient care."
It seems to me the trial court's logic is fallacious when based on the foregoing it ruled:
Plaintiffs' argument fails, because the crucial link, as required by I.C. Secs. 6-1012 and 6-1013, is missing. There is no evidence in the record establishing that the community standard as it relates to either the defendant-doctors or the hospital defendants is the same as the JCAH standards.
The logical syllogism which flows from the record is that if doctors and hospitals in Twin Falls adhere to the JCAH standards, then the JCAH standards become the local standard of care. Thus, by definition, if there is testimony that the defendants breached the JCAH standards, they also breached the local standards of care.
The trial court avoids the logic of the foregoing syllogism with the following statement:
Plaintiffs argue that the deposition of John Bingham, the MVRMC hospital administrator, provides this needed testimony. However, regardless of any argument that Mr. Bingham is not a duly qualified expert, all that he said was that he was aware of the JCAH standards. Nowhere did he state that those standards were equivalent to the community standard. See Bingham Depo., pp. 20, 24, 30 and 31. The only testimony that even approximates these requirements is that in which Mr. Bingham states that the coding system used by the medical records department is generally used throughout the country. Bingham Depo., p. 29. This acknowledgment is insufficient.
However, the latter analysis does not dispose of the argument that both the Magic Valley Regional Center and the Hospital Corporation of America are bound contractually to abide by the JCAH standards, and absent any affidavits to the effect that they practice below the standards they have contracted to practice under, the only reasonable inference is that the JCAH standards are in fact the Twin Falls standards and, thus, it was error to dispose of this case on summary judgment.
Accordingly, I would reverse and remand for further proceedings.
BISTLINE, J., concurs.

ON DENIAL OF PETITION FOR REHEARING
BISTLINE, Justice, on Denial of Petition for Rehearing.
The denial of a rehearing in this case is unpalatable for the same reason that I joined Justice Huntley's dissent to the initial opinion. The majority has now turned its blind eye to a record which establishes that the hospital and the doctors who practice there have adopted the standards established by the Joint Commission on Accreditation of Hospitals (JCAH) as the standards *1217 under which they will operate in Twin Falls, Idaho.
This point was made well and succinctly in the Petitioner's Brief and merits quotation:
POINT II
DEFENSE AFFIDAVITS TOGETHER WITH OTHER INFORMATION REFLECTED A KNOWLEDGE OF THE APPLICABLE STANDARD
Flawed Keystone
The Court's October 20, 1988 Decision effectively decides this case without even addressing the keystone of the lower court's decision. The essence of the lower court's decision was that plaintiffs' opposing affidavits were lacking because there was "no evidence" that JCAH standards were applicable in Twin Falls:
"There is no evidence in the record establishing that the community standard as it relates to either the defendant-doctors or the hospital defendants is the same as the JCAH standards."
R. 123. (Emphasis added.)
At another point in that decision, the District Court again erroneously concluded that there was nothing in the record showing JCAH standards were applicable in Twin Falls:
"The only testimony that even approximates these [JCAH] requirements is that in which Mr. Bingham states that the coding system used by the medical records department is generally used throughout the country. Bingham Depo., p. 29. This acknowledgment is insufficient."
R. 123. (Emphasis added.)
Interrogatories Admitted JCAH Affidavit Standard
The lower court was wrong. Dead wrong. And the keystone for the summary judgment fails miserably. The fact is that the applicability of JCAH standards to this case had been admitted in Answers to Interrogatories. Certainly, this Court can recognize that a Hospital has a duty to know whether its staff physicians are meeting certain hospital standards:
"§ 1.02 Governing Body
"[1]  Duties
"The governing body of a hospital is invested with overall responsibility for the hospital's operation. The Joint Commission on Accreditation of Hospitals (hereinafter referred to as the JCAH) has outlined three standards applicable to the governing body.
"(1) It is responsible for establishing policy, maintaining quality patient care and providing for institutional management and planning;
"(2) It is to avoid conflicts of interest; and
"(3) It is to ensure that all members of the governing body understand and fulfill their responsibilities.
"In summary, the governing body must ensure that proper professional standards are maintained."
* * * * * *
"[c]  Supervision of Medical Staff.
"[ii]  Privileges. The medical staff is charged with responsibility for conferring and denying staff privileges. However, the JCAH has made it clear that this delegation does not relieve the governing body [Hospital Management] of its ultimate responsibility for the appointment of medical staff members." Smith, Hospital Liability, Ch. 1, "Hospital Organizational Structure," p. 1-4 and 1-6. (Emphasis added.)
The December 12, 1985 Answers of the Hospital to plaintiffs' Interrogatories admitted JCAH standards were applicable:

"INTERROGATORY NO. 1: State whether you admit the 1983 [1982] Joint Commission on the Accreditation of Hospital's standards are applicable to defendants in this case."
"ANSWER: Yes." Hospital's Answers to Interrogatories, December 12, 1985; See plaintiffs' original Appeal Brief at p. 29. (Emphasis added.)

*1218 The Answer to Interrogatory No. 2 admitted that all JCAH standards were applicable except where related to services not offered by the hospital:
"INTERROGATORY NO. 2: If you contend that any portion of the 1982 JCAH standards are not applicable to defendants, state with specificity by reference to page and line number from the 1982 JCAH Accreditation Manual which standard does not apply and what you contend the applicable standard to be."
"ANSWER: This answering defendant does not now have a 1982 JCAH Accreditation Manual to which to refer. Generally speaking, those portions of the standards not applicable to MVRMC would be those pertaining to services not offered by the hospital. Similarly, it would appear that some standards, by their terms, would apply only to the hospital and not specifically to individual defendants." Hospital's Answers to Interrogatories, December 12, 1985; See plaintiffs' original Appeal Brief at p. 29. (Emphasis added.)
Depositions, Contracts, Bylaws of Standard
But in addition, the JCAH standards were shown as applicable in Twin Falls and were part of the evidence before the Court in many other ways:

 Evidence Reference
They were applicable by virtue of a contract P. 25-26, plaintiffs' original Appeal Brief;
between the Hospital and the Idaho Appendix to original Appeal Brief.
Dept. of Health and Welfare.
Federal law required JCAH standards to Plaintiffs' original Brief, p. 27; Burns
be met hospital-wide for a hospital to receive Deposition, 48:4-12, 22-25; 49:8-13.
Medicare payments for any patients.
The Hospital Management Contract mandated Plaintiffs' original Brief, p. 27-28; Tr.
JCAH standards and required the 94:19-25; 95:1-3; Appendix to original
hospital "to insure" that such standards Appeal Brief.
were met.
Both physician-defendants' Hospital Application Plaintiffs' Appeal Brief, p. 28-29; Bingham
for Staff Privileges required they Depo. 35:5-15; Tr. 136:12-23.
agree to maintain JCAH standards.
The Hospital's own Medical Staff Bylaws Plaintiffs' Brief, p. 32; plaintiffs' Brief
incorporated the optimal care standard set Regarding JCAH Standards and Duty of
forth in the JCAH. Optimal Care, p. 10 (lodged May 6, 1986).
The Nursing Policy standards also incorporated R. 167; plaintiffs' Brief, p. 32.
the optimal care standard as contained
in JCAH.

The evidence was substantial  if not overwhelming  that JCAH standards were applicable to defendants and to the Twin Falls community. It was clear error for the lower court to state there was "no evidence" of those standards. The summary judgment should be reversed.
Less than one year ago, Justice Shepard authored a majority opinion that contained some very fine-sounding words:
We take this occasion to express our disapproval of what appears to be a growing practice among the trial courts of this state dismissing medical malpractice cases at the summary judgment point on the basis that plaintiffs' expert witnesses are not sufficiently familiar with the standard of care to be expected from defendant-physicians... . [I]t appears that some of our trial judges fail to recognize the obligation to construe not only the evidence before the court, but all reasonable inferences that flow therefrom, most favorably to the non-moving party.

*1219 Clarke v. Prenger, 114 Idaho 766, 768, 760 P.2d 1182, 1184 (1988) (emphasis supplied).
The majority's refusal today to rehear this case based upon the very strong showing of error made by petitioner causes Justice Shepard's fine words in Clarke v. Prenger to sound with a very hollow ring.
Justice is not done today where an obdurate majority refuses to rehear a case which was disposed of by an opinion overly fraught with mere conclusions, and erroneous ones at that.
NOTES
[1] Those statements appear to be based on nurses' notes that the child displayed a purulent nasal discharge prior to the surgery. Even assuming that the defendant physicians had or were charged with knowledge of such notes and the nasal discharge, we find no indication in the record that proceeding with the surgery was a breach of the local standard of care.