828 P.2d 315

**Monica Louise HOENE,
Plaintiff–Appellant,**

v.

**Robert P. BARNES, M.D. Defendant–
Respondent.**

**No. 18859.**

Supreme Court of Idaho,
Boise, January 1991 Term.

March 20, 1992.

Cantrill, Skinner, Sullivan & King, Boise, for plaintiff-appellant. Gardner W. Skinner, Jr., argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for defendant-respondent. Gary T. Dance, argued.

JOHNSON, Justice.

This is a medical malpractice case. The only issue presented is whether the trial court was correct in granting summary judgment on the ground that the claimant's out-of-state medical expert was not competent to testify. We conclude that under the unique circumstances of this case, the trial court should not have granted summary judgment.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Dr. Robert P. Barnes, a cardiovascular surgeon, operated on Monica Louise Hoene to correct a congenital heart defect known as patent ductus arteriosus (PDA). Barnes performed the surgery at St. Luke's Regional Medical Center in Boise, Idaho in December 1985. Following surgery, Monica suffered paralysis of her lower body.

Monica sued Dr. Barnes, claiming that Dr. Barnes was negligent during the surgery, causing Monica's paralysis. Dr. Barnes moved for summary judgment on the ground that Monica could not establish essential elements of a medical malpractice claim.

The trial court granted summary judgment dismissing the lawsuit on the ground that Dr. Donald B. Effler, the expert witness on whom Monica relied to establish Dr. Barnes' negligence, did not have actual knowledge of the relevant community standard of health care practice as is required by I.C. §§ 6–1012 and 6–1013. The trial court subsequently awarded costs to Dr. Barnes. Monica appealed.

## II.

### THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT.

Monica asserts that under the unique circumstances of this case, Dr. Effler was qualified to testify. We agree.

I.C. §§ 6–1012 and 6–1013 provide:

**6–1012. Proof of community standard of health care practice in malpractice case.**—In any case, claim or action for damages due to injury to or death of any person, brought against any physician and surgeon or other provider of health care, including, without limitation, any dentist, physicians' assistant, nurse practitioner, registered nurse, licensed practical nurse, nurse anesthetist, medical technologist, physical therapist, hospital or nursing home, or any person vicariously liable for the negligence of them or any of them, on account of the provision of or failure to provide health care or on account of any matter incidental or related thereto, such claimant or plaintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specializa-

tion, if any. If there be no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at said time may be considered. As used in this act, the term "community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.

**6–1013. Testimony of expert witness on community standard.**—The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.

At the time of Monica's PDA surgery, Dr. Barnes was one of only six cardiovascular surgeons in the state of Idaho. All six of these cardiovascular surgeons practiced together in Boise as a professional association.

These circumstances cause us to examine and construe the following portions of I.C. § 6–1012:

If there be no other like provider in the community and the standard of practice is therefore indeterminable, evidence of such standard in similar Idaho communities at said time may be considered. As used in this act, the term "community" refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.

Under the unique circumstances of this case, there was no provider of PDA surgery by a cardiovascular surgeon in Idaho other than Dr. Barnes and his colleagues who practiced as a professional association. Because these physicians all practiced together and were part of one business entity, we treat them as one provider under the statute. Therefore, we conclude under I.C. § 6–1012 that the standard of health care practice in the community ordinarily served by St. Luke's was indeterminable.

We also conclude that no "similar Idaho communities" existed about which Monica could have presented evidence of the standard of practice for a cardiovascular surgeon performing PDA surgery. Therefore, I.C. §§ 6–1012 and 6–1013 do not provide a means of establishing the applicable standard of practice in this case.

In resolving whether Dr. Effler qualified as an expert witness to testify on Monica's behalf, we turn to decisions of this Court that predate the enactment of I.C. §§ 6–1012 and 6–1013. These decisions constituted the common law of this state concerning the proof of medical malpractice actions before the legislature modified the common law by enacting these statutes. To the extent I.C. §§ 6–1012 and 6–1013 do not apply, these earlier decisions state the common law of this state. *See* I.C. § 73–116; *Evans v. Twin Falls County,* 118 Idaho 210, 215, 796 P.2d 87, 92 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 960, 112 L.Ed.2d 1048 (1991).

In *State v. Smith,* 25 Idaho 541, 138 P. 1107 (1914), a case in which a physician was convicted of manslaughter, the Court said:

[A] physician or surgeon is bound to exercise such reasonable care and skill as is possessed and exercised by physicians and surgeons generally in good standing of the same system or school of practice or treatment in *the locality and community of his practice,* having due regard to the advanced state of the school or

science of treatment at the time of such treatment.

*Id.* at 550, 138 P. at 1109 (emphasis added).

The Court's reference in *Smith* to "the locality and community" of the physician's practice was dicta, since the Court did not premise its decision on the locality and community of the defendant's practice, but rather stated:

> It was clearly erroneous for the court to permit physicians of a different school to testify as experts in a case of this kind as to the correctness and professional skill of the treatment administered.

*Id.*

Within a few years, the Court addressed the question of locality of practice again. In *McAlinden v. St. Maries Hospital Ass'n*, 28 Idaho 657, 156 P. 115 (1916), the Court stated:

> The degree of skill and care required of a physician or surgeon in the treatment of any given case has been frequently stated in decisions involving liability of such physicians or surgeons in cases of malpractice. The general rule is laid down in 30 Cyc. 1570, as follows:
>
> "A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his . profession in good standing, practicing *in similar localities,* and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment."

28 Idaho at 675, 156 P. at 120 (emphasis added).

A few years later, the Court appeared to take a different tack. In *Swanson v. Wasson*, 45 Idaho 309, 262 P. 147 (1927) the Court stated:

> [A] physician is bound to bestow such reasonable and ordinary care, skill and diligence as physicians and surgeons in *the same neighborhood,* in the same general line of practice, ordinarily have and

exercise in like cases. (21 R.C.L., p. 381, sec. 27.)

45 Idaho at 311, 262 P. at 147 (emphasis added).

This statement appears to shift the focus of the standards of practice from "similar localities," as stated in *McAlinden* to "the same neighborhood." A closer examination of the source from which the Court took its statement in *Swanson,* however, reveals that there was no shift. The following clarification appears in 21 R.C.L., the authority cited in *Swanson:*

> From the language of some of the decisions it may be inferred that a physician or surgeon is held only to that degree of diligence, learning, and skill possessed by physicians and surgeons of the particular locality where he practices. Such a rule is not quite accurate. The standard in a particular community may be unusually low or high and the sounder rule is, not that the physicians's skill and degree of attention should be measured by those of his community, but by such as is exercised generally by physicians of ordinary care and skill in *similar communities,* and such is the rule established by the cases.

*Id.* § 30, p. 386 (emphasis added).

As verification that the Court did not intend the "same neighborhood" standard stated in *Swanson* to change the "similar localities" standard stated in *McAlinden,* in *Davis v. Potter,* 51 Idaho 81, 2 P.2d 318 (1931) the Court quoted both standards without distinguishing the two:

> This court has followed the rule laid down in 30 Cyc. 1570 (see, also, 48 C.J. 1113 et seq.) as to the degree of skill and care required of physicians and surgeons in caring for their patients. "A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in *similar localities,* and it is his duty to use reasonable care and diligence in the exercise of his skill and

the application of his learning, and to act according to his best judgment." (*McAlinden v. St. Maries Hospital Assn.*, 28 Ida. 657, Ann.Cas.1918A, 380, 156 Pac. 115.) He "is bound to bestow such reasonable and ordinary care, skill and diligence as physicians and surgeons in *the same neighborhood*, in the same general line of practice, ordinarily have and exercise in like cases." (*Swanson v. Wasson*, 45 Ida. 309, 262 Pac. 147.)

51 Idaho at 87–88, 2 P.2d at 320 (emphasis added).

*Flock v. J.C. Palumbo Fruit Co.*, 63 Idaho 220, 118 P.2d 707 (1941) provides further evidence that under the common law the Court adhered to the similar localities standard. In *Flock*, the Court stated that the standard of care and treatment resting upon a physician and surgeon is that "exercised by competent physicians and surgeons in the same or like locality." 63 Idaho at 230, 118 P.2d at 711 (citing *McAlinden, Swanson,* and *Davis*).

From this review of the decisions of this Court, we conclude that prior to the enactment of I.C. §§ 6–1012 and 6–1013 in 1976, the common law rule in this state was the similar localities rule. The Court did not limit the similar localities to those in Idaho. Because there were no similar Idaho communities in which cardiovascular surgeons provided PDA surgery in 1985, we conclude that other similar localities or communities outside the state may be considered. Otherwise, a medical malpractice claimant like Monica would not be able to establish a prima facie case. This would insulate physicians in the unique position of Dr. Barnes from any malpractice action. There is no indication in I.C. §§ 6–1012 and 6–1013 that the legislature intended to grant this immunity from suit to those physicians who have unique specialties in this state.

Dr. Effler stated in an affidavit filed in opposition to Dr. Barnes' motion for summary judgment that he was a board certified thoracic surgeon who specialized in cardiovascular surgery. He stated that he had actual knowledge of the standards of health care practiced by board certified thoracic surgeons in 1985 as those standards applied to the care and treatment of patients with congenital heart disorders like Monica's.

In his deposition, Dr. Effler stated that from 1975 through 1985 he practiced cardiovascular surgery in a community hospital in Syracuse, New York. He also testified:

> I had served for two terms on the American Board of Thoracic and Cardiovascular Surgery. I have served for the College of Surgeons. I served on the Editorial Board for the Journal of Thoracic Surgery. If there is a discrimination, an alteration of quality of care in any place in the United States, it would certainly be an issue that came to my attention. And there was no such issue. I have never heard in my professional life anybody from any part of the United States of America and its—within its continental limits, say that our particular area is not expected to measure up to the care that is given in other areas of the United States.

In *Pearson v. Parsons*, 114 Idaho 334, 757 P.2d 197 (1988), the Court reiterated the standard for reviewing whether summary judgment should be granted in a medical malpractice case. In *Pearson*, the Court stated that the trial court, and this Court on review, should liberally construe the facts in the record in favor of the nonmoving party and draw all reasonable inferences from the record in favor of the nonmoving party. *Id.* at 338, 757 P.2d at 201.

When we construe Dr. Effler's statements liberally in Monica's favor and draw all reasonable inferences from those statements, we conclude that the trial court should not have granted summary judgment. For the purpose of opposing a motion for summary judgment, Dr. Effler demonstrated actual knowledge of the standards of practice for cardiovascular surgeons throughout the United States, including the standards in localities similar to the community ordinarily served by St. Luke's. Although his testimony at trial would properly be limited to comparing Dr. Barnes' care for Monica with the standards of practice in localities similar to the community ordinarily served by St. Luke's at

the time of Monica's surgery, Dr. Effler demonstrated sufficient knowledge of the standards of care in similar localities to withstand the motion for summary judgment.

## III.

## CONCLUSION.

We vacate the summary judgment and award of costs, and remand the case for further proceedings consistent with this opinion.

We award costs to Monica on appeal.

BISTLINE, BOYLE and McDEVITT, JJ., concur.

BAKES, Chief Justice, dissenting:

The majority errs when it concludes that the class of health care provider to which Dr. Barnes belonged was "cardiovascular surgeons." After making that determination, the majority then concludes that the only other cardiovascular surgeons in the State of Idaho were those with whom Dr. Barnes practiced in a professional association in Boise, and therefore the standard of health care practice was indeterminable. However, the board-certified category which we are dealing with in this case is thoracic surgery, not cardiovascular surgery. The plaintiff's expert witness in this case, Dr. Effler, stated in his affidavit that he is "board-certified in thoracic surgery." Dr. Barnes, the defendant, testified in his deposition that he is a board-certified thoracic surgeon. There is no showing in any of the affidavits or depositions that there is a separate board certification for cardiovascular surgeons. Cardiovascular surgery is apparently one type of surgery which thoracic surgeons perform.

I.C. § 6–1012 provides liability for a physician if he "negligently failed to meet the applicable standard of health care practice of the community ... *with respect to the class of health care provider that such defendant then and there belonged* to and in which capacity he, or she or it was functioning. Such individual providers of health care shall be judged in such cases in comparison to similarly trained and quali-

fied providers of the same class in the same community...." In *Buck v. St. Clair*, 108 Idaho 743, 702 P.2d 781 (1985), this Court construed I.C. § 6–1012, stating:

Our holding is to be construed so as to allow a board-certified physician to testify regarding the standard of care only in cases involving other doctors *who are also board-certified in the same specialty....*

In order to meet the requirement of I.C. § 6–1013(c) showing adequate familiarization a specialist must demonstrate two elements: first, *that he is board-certified in the same specialty as that of the defendant-physician; this demonstrates knowledge of the appropriate standard of care of board-certified physicians practicing in the specialty in question.* Second, an out-of-the-area doctor must inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained.

108 Idaho at 745–46, 702 P.2d 781, emphasis added.

Again in *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989), we stated:

An expert from outside the state must demonstrate that he possesses knowledge of the local community standard. If he is board certified in the same specialty, he must, at a minimum, inquire of a local specialist to determine whether the local community standard varies from the national standard for that board certified specialty.

Both the defendant, Dr. Barnes, and the plaintiff's expert witness were board-certified in thoracic surgery. Therefore, as our earlier cases have stated, for an expert physician to render an opinion, the expert must be board-certified in the same specialty as that of the defendant physician, and must establish that he is familiar with the applicable standard of care practiced by physicians with the same board certification in the local community.

Plaintiff's Dr. Effler never made any showing that he ever attempted to contact

any board-certified thoracic surgeon practicing in the area served by St. Luke's Hospital to determine whether or not there was any variation from any national standard for board-certified thoracic surgeons, if indeed there is such a thing as a national standard for board-certified thoracic surgeons. Dr. Effler did testify that he contacted a board-certified thoracic surgeon in Twin Falls, Idaho, but he made no showing of an attempt to contact any board-certified thoracic surgeons in Boise, Idaho, nor did he make any showing that there were no thoracic surgeons who were not associated with Dr. Barnes.[1] Accordingly, the trial court did not err in refusing to consider Dr. Effler's affidavit because it failed to establish that Dr. Effler was familiar with the local standard of care practiced by board-certified thoracic surgeons in Boise, Idaho.

The majority errs, I believe, because it assumes that the specialty in question in this case is cardiovascular surgery, not board-certified thoracic surgery. There is nothing in the record to indicate that cardiovascular surgery is a class of health care that is board-certified. Apparently, cardiovascular surgery is one type of surgery which some board-certified thoracic surgeons perform, perhaps exclusively. Nevertheless, under our cases of *Buck v. St. Clair, supra; Strode v. Lenzi, supra;* and *Grimes v. Green,* 113 Idaho 519, 746 P.2d 978 (1987), a physician seeking to render an expert opinion of negligence of a defendant physician must "demonstrate knowledge of the appropriate standard of care of board-certified physicians practicing in the specialty in question." *Buck v. St. Clair,* 108 Idaho 743, 746, 702 P.2d 781, 784. Thus, the Court's conclusion that there were no other cardiovascular surgeons in Idaho, except those associated with Dr. Barnes in Boise, Idaho, and therefore "the standard of health care practice in the community ordinarily served by St. Luke's Hospital was indeterminable," misses the point. Both the defendant doctor and the plaintiff's expert were board-certified thoracic surgeons. I.C. § 6–1012 and our cases require the defendant physician to be judged by doctors board-certified in the same specialty, *i.e.,* thoracic surgery. There was no foundation laid by Dr. Effler showing that he was familiar with the standard of health care practice in the community served by St. Luke's Hospital for thoracic surgeons, and no showing that there were not any board-certified thoracic surgeons other than those associated with Dr. Barnes. Therefore the trial court did not abuse its discretion in rejecting Dr. Effler's affidavit on the grounds that he failed to satisfy the requirements of I.C. § 6–1012 that he was familiar with the standard existing for board-certified thoracic surgeons in Boise, Idaho, when this surgery occurred.

Whether or not a witness has sufficient expertise to permit him to render opinion evidence is within the broad discretion of the trial court. *Sidwell v. William Prym, Inc.,* 112 Idaho 76, 730 P.2d 996 (1986). Given the fact that plaintiff's witness, Dr. Effler, made no contact with any thoracic surgeon in Boise, Idaho, and made no showing that there were none available to contact, the trial court did not err in refusing to consider the affidavit of Dr. Effler.

---

1. A quick review of the current Boise yellow pages indicates that there are at least four physicians practicing thoracic surgery in the Boise, Idaho, area, none of whom appear to be of the group associated with Dr. Barnes or his colleagues.