# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 42004

CHARLES EDWARD LEPPER and JANICE )
LEPPER, husband and wife, )
                              )
    Plaintiff-Appellant, )
                                )
v. )
                                )
EASTERN IDAHO HEALTH SERVICES, )
INC., d/b/a EASTERN IDAHO REGIONAL )
MEDICAL CENTER and STEPHEN R. )
MARANO, M.D., )
                                )
    Defendants-Respondents, )
                                )
and )
                                )
JOHN DOE PERSONS OR ENTITIES I )
through X, )
                                )
    Defendants. )

Twin Falls, November 2015

2016 Opinion No. 25

Filed: March 4, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

District court judgment, <u>vacated</u> and <u>remanded.</u>

Nalder Law Office, Idaho Falls, for appellant. G. Lance Nalder argued.

Quane Jones McColl, PLLC, Boise, for respondent Stephen R. Marano, M.D. Marvin Smith argued.

Smith & Banks, PLLC, Idaho Falls, for respondent Eastern Idaho Regional Medical Center. Matthew McColl argued.

_____

BURDICK, Justice

    This appeal arose from a medical malpractice suit, where Charles and Janice Lepper (the Leppers) alleged the negligence of Eastern Idaho Health Service, Inc. d/b/a Eastern Idaho Regional Medical Center (EIRMC) and Dr. Stephen R. Marano, (Dr. Marano) rendered Charles Lepper a paraplegic. The Leppers appeal the Bonneville County district court's grant of summary judgment in favor of EIRMC and Dr. Marano (collectively, Respondents). The Leppers argue the district court erred in ruling that based on the language of its Scheduling Order, the

1

Leppers' expert witness disclosures required disclosure of all expert witness opinions, including foundational facts required by statute. We vacate and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2010, Charles Lepper underwent surgery on his lower back, which was performed by Dr. Marano at EIRMC. Charles was discharged from the hospital on September 3, 2010. However, due to pain and complications following the surgery, Charles was readmitted to EIRMC on September 10, 2010. The next day, a physician's order was issued directing nurses to ask that Dr. Marano be contacted to see Charles regarding his symptoms. However, the nurses at EIRMC never contacted Dr. Marano as ordered.

On September 14, 2010, while still admitted to EIRMC, Charles developed severe back pain and leg numbness. EIRMC's nurses and Dr. Marano allegedly failed to take steps upon becoming aware of Charles's condition to evaluate, treat, or care for him. On September 15, 2010, another nurse took over Charles's care and performed an assessment on him at approximately 8:32 a.m. At that time, Charles was unable to move his legs and was experiencing acute back and leg pain. However, apparently that nurse did not communicate Charles's worsening condition to a doctor. Dr. Marano later testified that "nothing was reported" to him about Charles's deteriorating condition until he "walked in on rounds" at approximately 10:00 a.m. on September 15, 2010. At that time, Dr. Marano ordered an MRI for Charles, which led to the diagnosis that Charles was suffering from the effects of a compression of the cauda equina as a result of an epidural hematoma. Charles ultimately suffered permanent paralysis of his lower extremities and has bowel and bladder dysfunction to the extent that he requires a catheter and a colostomy bag.

On June 17, 2011, the Leppers filed a medical malpractice claim against EIRMC. The Leppers subsequently amended the complaint to add Dr. Marano as a co-defendant. On January 18, 2013, the district court entered its Order and Notice Setting Jury Trial. In that order, the district court required the Leppers to disclose their expert witnesses, "including opinions and conclusions" at least 100 days before trial, or December 2, 2013. The parties subsequently stipulated to modify the expert witness and discovery disclosure deadlines, but the substantive language from the original order regarding what disclosures were required remained unchanged. The parties' stipulated agreement to an extension of the discovery deadlines was formalized by a

court order (Scheduling Order). The result was that the Leppers were required to file their expert witness disclosures, including opinions and conclusions, by October 30, 2013.

The Leppers filed their expert witness disclosures on October 30, 2013, disclosing the opinions and conclusions of Bradford W. DeLong, M.D. (Dr. DeLong) and Elizabeth Arruda, RN, BSN, CMSRN (Arruda). However, the disclosures did not reference the experts' familiarity with the applicable standard of care.

Respondents subsequently filed a motion *in limine* to strike and exclude the Leppers' expert witnesses, including Dr. DeLong and Arruda, on the basis that the expert witness disclosures made no mention of familiarity with the applicable standard of care. On December 3, 2013, the district court entered an order granting the motion to strike the Leppers' expert witnesses. As to Dr. DeLong and Arruda, the district court reasoned that their disclosures did not include the elements required by Idaho Code section 6-1012, in particular, knowledge of the local standard of care. The district court noted that the Leppers' duty to disclose "included the duty to disclose *all testimony* which would establish the witness' competency to testify." (emphasis in original). The district court ruled that because Dr. DeLong and Arruda did not affirmatively show their knowledge as to the local standard of care, and how they came by that knowledge, their testimony was irrelevant.

That same day, the Leppers filed a motion for reconsideration of the district court's December 3, 2013 order, as well as a motion to supplement their expert disclosures and to extend the expert disclosure deadline. The district court ruled on those motions in an order dated December 5, 2013. In that order, the court found no basis to reconsider its December 3, 2013 order, but allowed the Leppers fourteen days to supplement their original expert disclosures to show Arruda and Dr. DeLong were familiar with the applicable standard of care, or an alternative basis for the admissibility of their testimony.

On December 17, 2013, the Leppers produced supplemental disclosures and reports regarding Arruda and Dr. DeLong. The disclosures stated that both experts had familiarized themselves with the applicable standard of care, as set forth in their supplemental reports. The following day, Respondents filed a motion to reconsider the December 5, 2013, order granting the Leppers fourteen days in which to supplement their expert disclosures.

The district court granted that motion in a January 14, 2014 order, which stated:

3

At the time of the [December 3, 2013,] hearing, the court sustained the object[ion] precluding the testimony on the grounds that the testimony was irrelevant since it was not related to a local standard of care. However, through various statements made at the time of the objection hearing, [the] Court believed that the defective disclosure was perhaps due to inadvertence in disclosing how the experts became familiar with the local standard of care.

…

In review, it is now clear that this was not a situation where there was an inadvertent failure in disclosing how the expert witnesses were familiar with the local standard of care, but rather a complete failure on the part of the expert witnesses to familiarize themselves with the standard of care. As such, as of the time disclosures were due, as of the time Defendants objected, as of the time of the hearing on the objection, and as of the time Plaintiffs sought reconsideration and additional time, Plaintiffs' experts had still not familiarized themselves with the local standard of care. There was no showing of good cause why the experts had not previously familiarized themselves with the standard of care, but simply a request for additional time to do so.

Thus, the district court determined that it erred when it granted the Leppers more time to file their supplemental expert disclosures. Consequently, the district court granted Respondents' motion to reconsider the court's December 5, 2013, order. The district court also noted that "[t]o the extent Defendants believe this ruling is dispositive of the case, they may file a motion for summary judgment. The motion may be based on the record without need for a hearing."

That same day, Respondents filed motions for summary judgment on the basis that without experts to testify as to how either party breached the applicable standard of care, the Leppers could not meet their burden of proof.

Seven days later, the Leppers filed a motion for reconsideration of the district court's January 14, 2014, order. The district court granted the Leppers fourteen days to file all affidavits, briefs, or other documents in opposition of the motions for summary judgment, as well as any documents in support of the Leppers' motion for reconsideration. The Leppers subsequently filed a supplemental affidavit of Arruda, which outlined her review of EIRMC's internal policies and procedures which were disclosed by EIRMC after the October 30, 2013, disclosure deadline.

The district court addressed both the motion for summary judgment and the motion for reconsideration in a February 14, 2014, order. In that order, the district court denied the Leppers' motion for reconsideration and granted Respondents' motions for summary judgment. The court concluded that it would not consider the affidavits from the Leppers' expert witnesses in opposition to summary judgment and/or in support of reconsideration because the affidavits were

4

filed after the October 30, 2013, disclosure deadline and were therefore untimely. The court again noted that Arruda and Dr. DeLong were not familiar with the local standard of care at the time expert disclosures were due and concluded that without the testimony of competent experts, "there is no dispute that . . . Plaintiffs cannot present a prima facie case of malpractice against Defendants, [and] Defendants are entitled to summary judgment."

Concurrent with entering summary judgment in favor of Respondents, the district court entered its judgment pursuant to IRCP 54. On February 28, 2014, the Leppers filed a motion for reconsideration of the court's February 14, 2014, order and subsequent final judgment. On March 14, 2014, the district court entered an order denying the Leppers' motion for reconsideration, reasoning again that the inadmissible supplemental expert disclosures and reports could not be used to preclude summary judgment. The Leppers timely appealed to this Court.

## II.    ISSUES ON APPEAL

1. Whether the district court abused its discretion in ruling that its Scheduling Order required disclosure of all information that would establish the Leppers' experts' competency to testify.

2. Whether the district court abused its discretion by excluding the testimony of Dr. DeLong and Arruda.

3. Whether the district court erred by denying the Leppers' motion to reconsider the exclusion of their experts.

4. Whether the district court erred by granting Respondents' motion for reconsideration.

5. Whether the district court erred by granting the Respondents' motion for summary judgment.

6. Whether the district court erred by denying the Leppers' motion to reconsider the court's decision granting summary judgment in favor of Respondents.

7. Whether Respondents are entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

This Court reviews a summary judgment order under the same standard the district court used in ruling on the motion. *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006). "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is proper. I.R.C.P. 56(c). The burden is on the moving party to prove an absence of genuine issues of material fact. *Evans v. Griswold*, 129

Idaho 902, 905, 935 P.2d 165, 168 (1997). In addition, this Court views the facts and inferences in the record in favor of the non-moving party. *Id.*

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002).

## IV. ANALYSIS

The Leppers raise several issues on appeal. The ultimate issue is whether the district court erred in granting summary judgment in favor of Respondents. However, the resolution of that issue, together with the other sub-issues the Leppers identify, turns on whether the district court erred in excluding the Leppers' expert witnesses on the ground that the Leppers failed to comply with the court's Scheduling Order. More specifically, the issue is whether the district court erred in concluding that its Scheduling Order, which required disclosure of expert witnesses and their opinions and conclusions, also required disclosure of all foundational requirements under Idaho Code sections 6-1012 and 6-1013. Thus, we first address that aspect of the district court's ruling.

**A. The district abused its discretion when it excluded the Leppers' experts.**

The Leppers argue that the district court erred in concluding that its Scheduling Order required disclosure of all foundational requirements under Idaho Code sections 6-1012 and 6-1013, and in ultimately striking their experts for failing to provide such foundation in their expert witness disclosures. Respondents argue that this Court's decision in *Edmunds v. Kraner*, 142 Idaho 867, 136 P.3d 338 (2006), indicates that expert witness disclosures must include such foundational requirements. Thus, Respondents argue that the district court correctly interpreted its Scheduling Order to require disclosure of foundation for the Leppers' experts' testimony. Consequently, Respondents urge this Court to affirm the district court's decision striking the experts due to the Leppers' failure to disclose foundational requirements in their expert witness disclosures.

A trial court has authority to sanction parties for non-compliance with pretrial orders, and sanctions may include those enumerated in I.R.C.P. 37(b)(2)(B), (C) and (D) for discovery violations. I.R.C.P. 16(i). It is within the district court's discretion whether to impose such sanctions, and we will not overturn such a decision absent a manifest abuse of that discretion. *Edmunds*, 142 Idaho at 872–73, 136 P.3d at 343–44. When determining whether a district court

6

abused its discretion, this Court considers three factors: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether it acted within the boundaries of its discretion and consistently with applicable legal principles, and (3) whether it reached its decision through an exercise of reason. *Id.* Here, the district court granted Respondents' motion to strike the Leppers' experts on the basis that the Leppers failed to comply with its Scheduling Order, which was a sanction pursuant to I.R.C.P. 16. Thus, we review that decision for an abuse of discretion.

A review of the record indicates that the district court correctly perceived its decision to strike the Leppers' experts as one of discretion. However, for reasons discussed below, we hold that the district court acted outside the boundaries of that discretion and inconsistent with this Court's precedent when it decided to strike the Leppers' experts.

Before outlining the relevant law, it is important to understand the way in which discovery proceeded in this case. The district court's amended Scheduling Order stated:

> Plaintiffs' expert witness disclosure, including opinions and conclusions must be filed on or before October 30, 2013.

The Leppers filed their expert witness disclosures on October 30, 2013, disclosing the opinions and conclusions of Dr. DeLong and Arruda. Respondents subsequently filed a motion *in limine* to strike and exclude Dr. DeLong and Arruda on the basis that the expert witness disclosures made no mention of familiarity with the applicable standard of care. The district court agreed with Respondents and entered an order granting their motion to strike Dr. DeLong and Arruda. The district court reasoned that the disclosures did not include the elements required by Idaho Code section 6-1012: particularly, knowledge of the local standard of care. The district court noted that the Leppers' duty to disclose "included the duty to disclose *all testimony* which would establish the witness' competency to testify." (emphasis in original). The district court ruled that because Dr. DeLong and Arruda did not affirmatively show their knowledge as to the local standard of care, and how they came by that knowledge, their testimony was irrelevant and should therefore be excluded. The district court, by some inferential understanding, determined that the foundational requirements of Idaho Code sections 6-1012 and 6-1013 must be included in the disclosure of the experts' opinions and conclusions. The relevant law and the facts of this case do not support such a great inferential leap.

As a preliminary matter, the district court erred in assuming that Idaho Code sections 6-1012 and 6-1013 apply to disclosure requirements. There is a difference between the

7

requirements for expert witness disclosures in the early discovery stages of a case, and the requirements for admissibility of expert witness testimony at trial or in summary judgment. Idaho Code sections 6-1012 and 6-1013 apply to the admissibility of expert witness testimony for trial, not to disclosures in the discovery stages of a case.

Our discovery rules pertaining to expert witnesses provide:

A party must disclose to the other parties **by interrogatory and/or court order,** the identity of any witness it expects will testify at trial to present evidence under I.R.E. 702, 703 and 705.

For individuals retained or specially employed to provide expert testimony in the case or who are employees of the party: a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

I.R.C.P. 26(b)(4)(1)(i). Although this rule contains a detailed list of the information that parties must disclose for expert witnesses, the language indicates that the information must be specifically requested by interrogatory or court order.

Consistent with that premise, in *Edmunds*, this Court determined that the district court abused its discretion when it imposed discovery sanctions on a party for failing to disclose information not specifically required by its scheduling order. 142 Idaho at 875, 136 P.3d at 346. There, the plaintiff had disclosed his standard of care expert prior to the district court's deadline, but later filed an affidavit changing the expert's opinion on the local standard of care. *Id.* at 872, 36 P.3d at 343. The district court excluded the affidavit, finding that it was untimely under the scheduling order and I.R.C.P. 26(e) because it was filed more than a year after the pretrial order deadline and because it contained different opinions from those expressed in the first disclosure. *Id.* at 874, 136 P.3d at 345. On appeal, this Court held that the district court abused its discretion in excluding the affidavit because that decision was based on a scheduling order that only asked for the names of the expert witnesses, not information relating to the local standard of care. *Id.* at 874–75, 136 P.3d at 345–46.

Respondents argue that *Edmunds* actually supports the conclusion that a scheduling order requiring opinions and conclusions necessarily includes foundation for those opinions and conclusions pursuant to Idaho Code sections 6-1012 and 6-1013. This argument is without merit.

The paragraph in *Edmunds* addressing Idaho Code sections 6-1012 and 6-1013 was merely dicta recognizing that expert *testimony* must demonstrate the expert's familiarity with the applicable standard of care before it can be *admissible as evidence*. 142 Idaho at 874, 136 P.3d at 345 (emphasis added). Contrary to Respondents' interpretation of what *Edmunds* represents, this Court explicitly noted that the district court erred by essentially reading the requirements of Idaho Code sections 6-1012 and 6-1013 into its pretrial order because it "did not give the Edmunds notice that they would be held to this standard in their initial disclosures, and ignored that Idaho law and rules of civil procedure contemplate that expert opinions can change and develop during the course of litigation." *Id.* at 875, 136 P.3d at 346. This Court did note, however, that district courts are free to issue more detailed pretrial orders to further clarify the general rules of discovery. *Id.* However, without express language in the scheduling order requiring information regarding the standard of care, this Court was unwilling to read that requirement into the order in *Edmunds*. The holding and reasoning from *Edmunds* actually supports the opposite conclusion than the one Respondents advance in this case.

Thus, as illustrated in *Edmunds*, this Court is unwilling to uphold discovery sanctions that are based on a party's failure to comply with disclosure requirements that do not appear on the face of the scheduling order. To hold otherwise would leave much uncertainty and inconsistency in the interpretation of vague and generalized scheduling orders. Additionally, if parties happen to miss the mark in interpreting such vague scheduling orders, they face harsh consequences, such as those the Leppers faced in this case—exclusion of experts and potentially even subsequent dismissal of their case. Such results are undesirable considering the parties have not yet completed discovery.

If a trial court in its discretion wishes to have an appropriate pretrial order containing names, opinions, conclusions, and foundational requirements, an example of such an order is illustrated in a recent decision from this Court. In *Easterling v. Kendall*, No. 42158, 2016 WL 298797 (Idaho Jan. 25, 2016), the district court's scheduling order required that the parties identify each expert and provide the subject matter each witness was expected to testify to and all information required under I.R.C.P. 26(b)(4). Specifically, the scheduling required the parties to identify each expert witness they intended to call at trial and to provide the subject matter each witness was expected to testify to and all information required under Idaho Rule of Civil Procedure 26(b)(4). *Id.* at *6. Thus, unlike the scheduling order in *Edmunds*, which required

9

disclosure of only the names of the experts, the scheduling order in *Easterling* explicitly required disclosure of the expert witness' names, opinions, conclusions, and all information under Rule 26(b)(4). The detailed scheduling order in *Easterling* gave parties appropriate notice as to precisely what detail was required by the trial judge in the parties' initial disclosures. Of course, trial judges have discretion as to which form to use in structuring their scheduling orders, but they need to state with particularity what information they require to be included in initial disclosures.

We recognize that the district court in this case did not have the benefit of our decision in *Easterling* when it ruled on the motion to strike. However, it did have this Court's decision in *Edmunds*, which, as indicated above, emphasized the importance of district courts issuing detailed scheduling orders to put parties on notice of what is expected for expert witness disclosures. Based on the transcripts from the hearings below, the district court recognized this when it stated, "*Edmunds* kind of makes the suggestion that the judge, if the judge is going to require disclosure, maybe the judge ought to indicate that the statute's part of the required disclosure." However, the court was then misled by counsel for defendants when they continued to insist that "opinions and conclusions" necessarily includes showing knowledge of the applicable standard of care, and that *Edmunds* supports that proposition. As we have discussed above, *Edmunds* explicitly stands for the opposite proposition.

Counsel for Respondents also suggested that consistent with *Edmunds*, the district court issued a detailed pretrial order, which somehow required disclosure of information regarding the applicable standard of care. The Scheduling Order in this case was not so detailed. Although it required opinions and conclusions, the order said nothing about disclosing the applicable standard of care. Therefore, by the plain language of the Scheduling Order, the Leppers were only required to disclose the opinions and conclusions of experts Dr. Delong and Arruda, not the foundational requirements for those opinions and conclusions. We emphasize again that scheduling orders must be detailed to put parties on notice as to what specific information is required for expert witness disclosures. In some instances it may be appropriate to include I.R.C.P. 26(b)(4)'s requirements, but in others, trial courts may find that foundation is not needed until proper inquiries pursuant to depositions and interrogatories have been made and the discovery process is complete.

10

Our evidentiary rules support our conclusion that a scheduling order requiring the disclosure of opinions and conclusions does not, by its terms, refer to the facts and data upon which those opinions and conclusions were based. Idaho Rule of Evidence 703, which deals with the basis of an expert witness's testimony, provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Conversely, Idaho Rule of Evidence 705, which deals with the disclosure of facts or data underlying an expert's opinion, provides "the expert may testify in terms of opinion or inference and give the reasons therefor without prior disclosure of the underlying facts or data . . . provided further that, *if requested pursuant to the rules of discovery the underlying facts or data were disclosed.*" (emphasis added). Read together, these two provisions suggest that the court must ask specifically for the underlying facts or data of an expert's opinions in its scheduling orders. The rules do not support the premise that a scheduling order that only requires the disclosure of experts' opinions and conclusions necessarily includes the underlying facts and data of those opinions and conclusions.

Here, the district court's Scheduling Order stated: "Plaintiff(s') expert witness disclosure, including opinions and conclusions must be filed at least 100 days before trial." Thus, unlike the scheduling order in *Easterling*, the Scheduling Order in this case did not reference Idaho Rule of Civil Procedure 26 disclosures, nor did it mention the foundational fact disclosures under Idaho Code section 6-1012 and 6-1013. When the parties stipulated to amend the disclosure dates in the pretrial order, the district court's language regarding the scope of disclosures from the initial Scheduling Order did not change. Indeed, the stipulation merely changed the disclosure deadline:

> Plaintiffs' expert witness disclosure, including opinions and conclusions must be filed on or before October 30, 2013.

Like the initial Scheduling Order, the amended Scheduling Order did not reference Idaho Rule of Civil Procedure 26 or Idaho Code sections 6-1012 and 6-1013. Thus, the plain language of the district court's amended Scheduling Order only required the experts' opinions and conclusions, which the Leppers fully complied with in their expert witness disclosures. By reading additional requirements into the Scheduling Order, the district court in this case effectively revised its Scheduling Order, which was an abuse of discretion. *See Citizens Against Range Expansion v. Idaho Fish And Game Dep't*, 153 Idaho 630, 635, 289 P.3d 32, 37 (2012) ("Although a district court is given deference in its interpretation of its own order, that deference cannot extend so far as to allow interpretation to become revision.").

11

The district court erred when it made the inferential leap that "opinions and conclusions" necessarily included all foundational facts, including the standard of care. We decline to hold the Leppers to a higher disclosure standard than what was required by the plain language of the Scheduling Order. Again, the district court was free to issue a more detailed scheduling order explicitly requiring such foundational facts, but without doing so, the Leppers could not be held to more demanding disclosure requirements that they had no prior notice of. We note that the supplemental affidavits in this case detailing the applicable standard of care for both experts were provided well before the discovery deadline. In any event, we hold that because the district court read requirements into its Scheduling Order that did not appear on the face of the order, the court abused its discretion in excluding experts Dr. DeLong and Arruda.

**B. The district court abused its discretion when it denied the Leppers' motions for reconsideration and when it granted Respondents' motion for reconsideration.**

We review a district court's denial of a motion for reconsideration for an abuse of discretion. *Rocky Mountain Power v. Jensen*, 154 Idaho 549, 554, 300 P.3d 1037, 1042 (2012). The parties in this case filed three separate motions for reconsideration leading up to summary judgment. We address each in turn below.

1. The Leppers' first motion for reconsideration and Respondents' subsequent motion for reconsideration.

The Leppers filed a motion for reconsideration following the district court's decision striking its experts for failing to include information regarding the standard of care in its disclosures. The district court denied the Leppers' motion for reconsideration, stating that although its Scheduling Order did not specifically reference the requirements of Idaho Code section 6-1012, the Leppers' disclosures still should have included information as to the experts' knowledge of the local standard of care or other facts that would have made their testimony admissible at trial. Despite denying the motion for reconsideration, the district court gave the Leppers an extension of time to comply with its expectations for the disclosures.

Respondents subsequently filed a motion to reconsider that extension of time, which the district court granted. The district court at that time determined that it made a mistake when it granted the Leppers additional leave within which to comply with its Scheduling Order because it was clear that the experts had not familiarized themselves with the local standard of care by the time the original disclosures were due. Therefore, the district court reaffirmed its earlier decision excluding Dr. DeLong and Arruda from testifying.

12

The district court abused its discretion first by denying the Leppers' motion for reconsideration, and then by granting Respondents' motion for reconsideration, thereby affirming its decision excluding Dr. DeLong and Arruda as experts. The district court based these decisions on its initial incorrect determination that its Scheduling Order required the Leppers to disclose information required under Idaho Code sections 6-1012 and 6-1013. As we discussed above, the district court erred in holding the Leppers to that standard and in excluding their experts on that basis. Because that erroneous reasoning was carried through to the foregoing motions for reconsideration, the district court again abused its discretion, first by denying the Leppers' motion for reconsideration, and then, by granting Respondents' motion for reconsideration.

    2.   The Leppers' second motion for reconsideration.

After the district court granted Respondents' motion for reconsideration, the Leppers filed a second motion for reconsideration, which included affidavits from Dr. DeLong and Arruda regarding the applicable standard of care. The district court denied that second motion for reconsideration on the basis that the disclosures for experts Dr. DeLong and Arruda were deficient and irrelevant because they did not disclose a familiarity with the local standard of care or other compliance with the requirements of Idaho Code sections 6-1012 and 6-1013. The district court found that "there was no good cause for failing to timely disclose admissible expert testimony and no good cause to allow additional time to do so," and that Respondents would "be prejudiced by allowing Plaintiffs additional time to prepare and disclose expert witness testimony beyond the original disclosure date." The district court consequently denied the Leppers' motion for reconsideration.

As a preliminary matter, it is difficult to conceive how Respondents would have been prejudiced by allowing the Leppers additional time to disclose information that was not required on the face of the Scheduling Order. In the hearing on the first motion to reconsider, the only prejudice the Respondents pointed out was that they (the Respondents) would be delayed. Indeed, counsel for Dr. Marano asserted that if the district court granted the Leppers an additional 14 days to disclose information regarding the applicable standard of care, it would

> throw[] everything 30, 45, 60 days forward because the calculations that are made with respect to taking depositions with respect to countering with expert witnesses are tailored to this Court's order, which said by October 30 give us this stuff. So if we're talking about getting it December 30, that's 60 days. So it's a 60-day

13

difference. Now, that's prejudice. And it's late, and there's no excusable neglect for it being late. So that's the prejudice Your Honor.

Counsel for Respondents did not explain *how* the delay was prejudicial. A mere conclusory statement that delay prejudiced Respondents, without more, does not show prejudice. Trial was not set to begin until early March of 2014. We simply cannot see how an additional two weeks would have prejudiced Respondents. Assuming *arguendo* that Respondents were prejudiced, their prejudice was likely slight compared to the severe prejudice the Leppers faced as a result of the district court's refusal to allow them more time with which to comply with its interpretation of the Scheduling Order.

In any event, it is clear that the district court denied the Leppers' second motion for reconsideration for the same reason it denied their first motion for reconsideration: because the Leppers failed to disclose the experts' familiarity with the applicable standard of care. Because we hold that the Scheduling Order did not require the disclosure of such facts, and that the district court abused its discretion in ruling otherwise, the district court also abused its discretion when it denied the Leppers' second motion for reconsideration. We turn now to the district court's decision granting summary judgment in favor of Respondents.

## C. The district court erred when it granted summary judgment in favor of Respondents.

To survive summary judgment in a medical malpractice case, a plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002). In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by Idaho Code section 6-1013, showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the expert witness has actual knowledge of the applicable community standard of care to which his expert opinion testimony is addressed. *Id.* (citing *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 937 P.2d 1212 (1997)).

The applicable community standard of care is defined in Idaho Code section 6-1012. It is: (a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; (b) as such standard existed at the time of the defendant's alleged

14

negligence; and (c) as such standard existed at the place of the defendant's alleged negligence. *Id.* (internal citations omitted).

Moreover, an affidavit under Rule 56(e) of the Idaho Rules of Civil Procedure must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the matters contained in the affidavit. I.R.C.P. 56(e). When an affidavit is presented by a party opposing a motion for summary judgment, the affidavit "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Also, the party opposing summary judgment must show that the affidavit is based upon the witness's personal knowledge and that it sets forth facts as would be admissible in evidence. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 331, 940 P.2d 1142, 1150 (1997). "The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

Thus, an expert testifying as to the standard of care in a medical malpractice action must show that he is familiar with the standard of care for the particular health care profession for the relevant community and time. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000). The expert must also state how he or she became familiar with that standard of care; this can include an out-of-area expert obtaining knowledge of the local standard of care by inquiring of a local specialist. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

Here, the Leppers filed affidavits and additional disclosures for Dr. DeLong and Arruda prior to the district court revoking its December 19, 2013, second extended disclosure deadline. The Leppers also filed updated affidavits and declarations in support of their second motion for reconsideration and opposition to summary judgment. These affidavits, disclosures, and declarations contained information demonstrating both Dr. DeLong and Arruda's familiarity with the applicable standard of care and how Respondents deviated from that standard of care.

First, the Leppers filed a supplemental report from Arruda detailing her familiarity with the local standard of care based on her consultation with a registered nurse who trains nurses at BYU-Idaho, and who also trained nurses at EIRMC on the same floor where Charles Lepper received treatment. Arruda then provided an additional sworn affidavit elaborating on IDAPA nursing regulations; the applicable nurse licensure examination standards, the standards under the interstate Nurse Licensure Compact, which Idaho is a member of; and the 2010 Idaho Falls

15

community standard of nursing practice as confirmed through her conversation with the registered nurse from BYU-Idaho. Arruda then stated that she relied on those standards to give her opinion as to how the nurses at EIRMC failed to meet the applicable standard of care. All of these sources can furnish foundation for standard of care testimony. *See Mattox v. Life Care Ctrs. of America, Inc.*, 157 Idaho 468, 478, 337 P.3d 627, 637 (2014) (expert witness "point[ed] to specific state and federal regulations governing the operation of nursing facilities" to establish her familiarity with the standard of care for Lewiston, Idaho nursing homes).

As to Dr. DeLong, the Leppers apparently made concerted efforts[1] to locate a neurosurgeon in Idaho Falls or in any community within Idaho for Dr. Delong to consult with, but were unable to secure a neurosurgeon willing to discuss the standard of care. Consequently, the Leppers pointed out to the district court that the standard of care for neurosurgeons in Idaho Falls was indeterminable. The Leppers then correctly relied on this Court's decision in *Hoene v. Barnes*, 121 Idaho 752, 828 P.2d 315 (1992), for the proposition that common law principles guide the determination of the applicable standard of care. As we noted in *Hoene*, the common law rule in this state was the similar localities rule, and similar localities are not limited to those in Idaho. *Id.* at 756, 828 P.2d at 319. We recognize that *Hoene* involved a situation where, outside of one cardiovascular surgeon and his colleagues, who all practiced together as one professional association, there was no other provider in the state of Idaho of the services the surgeon provided to the plaintiff. However, we see no reason why the same rule should not apply in circumstances here where every neurosurgeon in Idaho either declines to opine as to the standard of care, or simply does not respond. This is assuming of course, that a party can make a sufficient showing that concerted efforts have been made to secure information on the standard of care from a like provider, but that those efforts failed due to refusal of the providers to opine. Thus, in circumstances where not a single medical provider is willing to consult with a plaintiff's expert regarding the standard of care, the standard becomes indeterminable and the plaintiff may then look to other similar localities or communities outside the state. Otherwise, medical malpractice claimants in the Leppers' situation would not be able to establish a prima facie case.

---

[1] The Leppers stated that they attempted to contact every neurosurgeon in the State of Idaho in an attempt to obtain consultation on the standard of care, but that the neurosurgeons either declined to opine or did not reply. Consequently, it appears not a single neurosurgeon in the State of Idaho was willing to discuss the local standard of care with Dr. DeLong.

16

Dr. DeLong's affidavit testimony shows that Dr. DeLong consulted with a neurosurgeon who practiced in Billings, Montana, to establish the standard of care. Dr. DeLong then relied on that standard to determine that Dr. Marano did not exercise the degree of skill and learning ordinarily possessed and exercised by practicing members of his profession and good standing in similar localities.

The district court did not base its decision at summary judgment on inadequacies of affidavits of experts Dr. DeLong and Arruda. In fact, the district court did not consider their affidavits at all in granting Respondents' motion for summary judgment. Instead, the district court once again focused on the Leppers' failure to disclose information regarding the foundation for the applicable standard of care in their initial disclosures. Because the district court excluded Dr. DeLong and Arruda on that basis, the court concluded that the Leppers could not make out a prima facie case absent their expert witness testimony. Because we held that the district court abused its discretion in excluding Dr. DeLong and Arruda as experts, the district court should have considered the affidavits of Dr. DeLong and Arruda to determine whether there was a genuine issue of material fact that precluded summary judgment. Consequently, we hold that the district court erred when it granted summary judgment in favor of Respondents. Because we hold that the district court erred in granting summary judgment to Respondents, we do not need to address whether the district court erred in denying the Leppers' final motion to reconsider.

**C. Respondents are not entitled to attorney fees on appeal.**

Respondents request attorney fees on appeal pursuant to Idaho Code section 12-121 and Idaho Appellate Rules 40 and 41. All three provisions allow for attorney fees on appeal to the prevailing party. I.C. § 12-121; I.A.R. 40; I.A.R. 41. Since Respondents are not the prevailing parties on this appeal, we decline to award attorney fees.

## V. CONCLUSION

The district court abused its discretion when it interpreted its Scheduling Order to require disclosure of information regarding the applicable standard of care when the order only asked for the experts' names, opinions, and conclusions. Consequently, the district court erred when it excluded experts Dr. Delong and Arruda for failing to disclose information relating to the standard of care. Because the district court's decision regarding the expert witness disclosures carried through and was the basis of the district court's (1) denial of the Leppers' initial motion for reconsideration; (2) grant of Respondents' motion for reconsideration; (3) denial of the

17

Leppers' second motion for reconsideration; and (4) grant of summary judgment in favor of Respondents, the district court erred in making those decisions as well. We therefore vacate the judgment and remand for proceedings consistent with this opinion. We decline to award attorney fees on appeal to Respondents. Costs to the Leppers.

Chief Justice J. JONES and Justice EISMANN, **CONCUR.**

HORTON, J., concurring.

I reluctantly concur in the Court's determination that the district court erred in its interpretation of the Scheduling Order. This decision underscores the necessity that trial courts carefully craft scheduling orders to avoid the type of gamesmanship that took place in this case and which has not been addressed by the Court's opinion.

As the Court notes, Plaintiffs were required to disclose the identity of their experts by October 30, 2013. The Plaintiffs did so and provided responses to discovery which represented that accompanying reports by Dr. DeLong and Arruda set forth the substance of the opinions that the witnesses were expected to give at trial "and the specific facts and data upon which such opinions are based." Of course, these reports did not contain "specific facts and data" relating to the experts' familiarity of the applicable standard of health care practice, as required by Idaho Code section 6-1013, because neither expert had undertaken to familiarize himself or herself with those standards.

My view is that, in a medical malpractice case, the disclosure of the identity of an expert expected to testify as to compliance with, or the failure to comply with, the applicable standard of health care practice advances an implicit representation that the expert has, in fact, some basis of knowledge on that subject. In this case, this implicit representation was made explicit by Plaintiffs' attorney[2] in response to the motion to exclude the testimony of Dr. DeLong and Arruda:

> Now, I can represent to you as an officer of the Court that these people would not give opinions that they weren't prepared foundationally to back up and do it properly.
> …
> I guess the point that I'm making, your Honor, is this: There are various ways that an expert can become familiar. If they want to know, they can ask. As we're willing to tell them. I mean, this isn't a hide the ball. This isn't a contest of cat and mouse. We're willing to tell them.

---

[2] The misrepresentation to the trial court was not made by Mr. Nalder.

18

The clear import of these statements is that Dr. DeLong and Arruda had familiarized themselves with the applicable standard of health care practice when preparing their opinions. This was not the case. Whether the misrepresentation was intentional or reckless, it is perhaps subject to sanctions under other provisions of the Idaho Rules of Civil Procedure or Bar disciplinary proceedings. However, I reluctantly agree with the Court that such misrepresentations are not sanctionable under Idaho Rule of Civil Procedure 16(i) for violation of the Scheduling Order.

In order to avoid the situation presented in the instant case, if a trial court wishes to rely on Idaho Rule of Civil Procedure 16(i) as an enforcement mechanism, the scheduling order must clearly specify that disclosure of opinions by experts offering testimony subject to the requirements of Idaho Code section 6-1013 must set forth the basis upon which the expert is familiar with the applicable standard of health care practice. However, I do not view enforcement of scheduling orders as the best mechanism for resolving disputes regarding the admissibility of such expert testimony.

Instead, this case underscores the desirability of crafting scheduling orders that set witness disclosures and discovery cutoffs sufficiently in advance of the scheduled trial so that the court may entertain summary judgment motions. In my view, it is less desirable to evaluate the admissibility of expert testimony in the context of enforcement of a scheduling order than in the course of ruling on a motion for summary judgment. In the latter instance, the requirements of Idaho Rule of Civil Procedure 56(e) provide the trial court with an appropriate mechanism to evaluate the admissibility of opinion testimony. Further, Idaho Rule of Civil Procedure 56(g) provides a mechanism for dealing with bad faith by a party.

EISMANN, J., concurs.

W. JONES, J., dissenting:

I feel compelled to dissent from the majority opinion because I do not believe the district court judge abused his discretion in striking the plaintiffs' expert witnesses on the grounds that they were not adequately disclosed and thereon dismissing the case on summary judgment since the plaintiffs did not have an expert who could opine that any of the defendants committed malpractice by breaching the applicable standard of care.

In the present case, the district court entered a pre-trial Order requiring plaintiffs to disclose their experts by October 30, 2014. The Order stated that such experts be disclosed "*including* opinions and conclusions." (Emphasis added). As of the time for disclosures,

plaintiffs disclosed only the experts' names and that they would testify as to the standard of care and that such standard of care was breached in several different ways. Thereafter, defendants moved to exclude the experts on the grounds that the disclosure was inadequate. I would be among the first to agree that the district court's Order requiring disclosure was not the best I have ever seen. Notwithstanding that fact, I feel that it was adequate considering other facts in the case.

The bottom line is that I believe plaintiffs' failure to disclose the information required regarding plaintiffs' expert witnesses is not the result of the district court's disclosure Order; on the contrary, the failure of disclosure clearly was the result of plaintiffs' delay in locating an expert, familiarizing him/her with the standard of care in Blackfoot, and preparing their experts with information regarding the standard of care and the reasons for breaching that standard. The disclosure of such information is the type that would fall into the class "*including* opinions and conclusions" (emphasis added) referenced by the district court judge in his disclosure Order. The majority opinion seems to infer that the court's Order referred to only one or more opinions and conclusions, but intentionally totally ignores the word "including" which obviously refers to something more than just opinions and conclusions.

I feel that in this day and age any licensed attorney is presumed to know the Idaho Rules of Civil Procedure, which include rules regarding disclosure of expert and lay witnesses. Idaho Rule of Civil Procedure 26(b)(4)(A)(1) provides requirements regarding the disclosure of expert witnesses as follows:

> Rule 26(b)(4)(A). Trial Preparation – Experts.
>
> (1) A party must disclose to the other parties by interrogatory and/*or court order*, the identity of any witness it expects will testify at trial to present evidence under I.R.E. 702, 703 and 705.
>
> (i) For individuals retained or specially employed to provide expert testimony in the case or who are employees of the party: a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

I.R.C.P. 26(b)(4)(A)(1)(i) (emphasis added). Additionally, although not applying directly to disclosure of expert witnesses, Idaho Code section 6-1013 requires expert witnesses in medical malpractice cases to have certain knowledge as follows:

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed . . . .

I.C. § 6-1013. Idaho Code section 6-1013 is useful information related to expert witness disclosures emphasized by I.R.C.P. 26(b)(4)(A)(1)(i) and the court's Order setting forth disclosures "*including* opinions and conclusions." (Emphasis added). It can perhaps be said to be common knowledge, at least among trial attorneys, that the disclosure of expert witnesses means something more than the witnesses' names. This is emphasized by the fact that Judge Tingey's Order required information "including opinions and conclusions."

Returning to the facts of this case, at the hearing on defendants' Motion to exclude plaintiffs' experts, plaintiffs' counsel represented to the court that they did not understand the court's Order requiring the additional disclosure information, such as what the standard of care is in Blackfoot, as well as how it was obtained, or how it was breached. In light of that situation, the judge denied the defendants' Motion and, under the belief that plaintiffs had just misunderstood the Order, gave plaintiffs an additional fourteen days to provide the required disclosures. When the time came to supplement the initial disclosures, plaintiffs threw a wicked curve ball at Judge Tingey. At the hearing on the Motion to exclude plaintiffs' experts again for inadequate disclosures, plaintiffs' attorney stated that they were unable to determine the standard of care in Blackfoot and accordingly could not give any expert opinion as to the applicable standard of care in Blackfoot as well as if defendants breached that standard of care or how it was breached.

In their supplemental disclosure, plaintiffs stated that they attempted to help their expert familiarize himself with the standard of care in Blackfoot by obtaining information from neurologists from around the state; however, every request had either been rejected or unanswered. Accordingly, plaintiffs needed additional time to start from scratch to find a

21

qualified expert. Moreover, such an expert would likely be an out of area expert, who would therefore have to familiarize himself with the local standard of care by finding a town with suitably similar local characteristics and medical procedures similar to the standard of care in Blackfoot. It is easy to see that the work still remaining to respond appropriately to the disclosure Order should have been started at the beginning of litigation.

The record established that this case was initially filed on June 17, 2011, and the Order for plaintiffs to disclose experts was entered on January 18, 2013. By stipulation and court formalization, the parties set October 30, 2014 as the deadline for expert witness disclosure, "*including* opinions and conclusions" (emphasis added); therefore, plaintiffs' had at least 650 days to get their ducks in a row. I cannot see how any conclusion can be reached other than that the plaintiffs simply did not exercise the diligence that one would expect to be used in such a case. This Court reviews the district court's Order for disclosure of experts witnesses' opinions under an abuse of discretion standard. I certainly cannot question the discretion of Judge Tingey in determining that the failure to disclose plaintiffs' experts was not in any way due to a problem with the court's pre-trial Order, but rather was entirely due to inattention or delay in preparing for the case. If in fact plaintiffs were confused or did not fully understand what was meant by the district court's Order for disclosure of expert witnesses' opinions, counsel should have reviewed Idaho Rule of Civil Procedure 26(b)(4)(A) and Idaho Code section 6-1013. Moreover, plaintiffs could have easily filed a motion with the court for clarification of its Order, and if necessary, for additional time to disclose expert witnesses' opinions.

I would affirm the decision by the district court.